IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**GEORGE THOMAS FREDRICK**                                     **PLAINTIFF**

**V.**                                                                                         **CASE NO. 2:10-CV-00180**

**LAURA STOGNER, DAVID MILLER,**
**BERKLEY HALL AND VERONICA HALL**                           **DEFENDANTS**

MEMORANDUM OPINION

Defendants in this civil rights lawsuit seek summary judgment on Plaintiff's Eighth Amendment claims of excessive force and delay and/or denial of medical treatment. In separate motions [62][64][86], Defendants argue that summary judgment is proper because: (1) Plaintiff did not suffer permanent injuries from the alleged incident; (2) Plaintiff was not denied treatment; and (3) Defendants, as government employees, are entitled to qualified immunity. Plaintiff opposes summary judgment and moves to dismiss [72] Defendants' motions. The Court, having considered the motions and applicable law, finds that summary judgment is proper and should be granted for the reasons stated below.

Facts and Procedural History

This lawsuit arises from an incident which occurred on or about March 16, 2010, wherein Plaintiff George Thomas Fredrick was injured while being restrained by Defendant David Miller at Marion Walthall Correctional Facility[1] ("MWCF"). At the time of the incident, Fredrick was

---

[1] According to Fredrick's testimony at the *Spears* hearing and the Mississippi Department of Corrections ("MDOC") website, Plaintiff is currently housed at South Mississippi Correctional Institution ("SMCI"). *See* Transcript of Omnibus/ Screening Proceedings 5:5- 6:11.

a post conviction detainee[2] at MWCF and Miller was a major at the facility. The incident began when MWCF Sergeant Victoria Hall instructed Miller to inventory Fredrick's property. Fredrick, believing the officers wanted to keep his legal materials and Bible, stated that he wanted to keep the property. Officer Miller told Fredrick to stop talking, but Fredrick did not comply. Fredrick alleges that Miller then laid him on the floor and handcuffed his hands behind his back. While trying to stand Fredrick up, Miller allegedly jerked Fredrick's wrists and "tore something" inside his right shoulder. *See* Transcript of Omnibus/ Screening Proceedings 10:5-11. Fredrick asserts that he informed Miller and Hall of his injury. Miller allegedly instructed Fredrick to complete a sick call request, but never provided him with a request form. Fredrick claims he submitted a sick call request the same day, but did not receive medical treatment until several days later.

Fredrick alleges that his treating physician, Dr. Walker, did not determine what was wrong with his shoulder, but ordered Magnetic Resonance Imaging ("MRI"). Fredrick contends that Laura Stogner, a nurse at MWCF, told Dr. Walker that the county was unable to pay for the MRI due to its high cost. According to Fredrick, Dr. Walker ordered X-rays on his shoulder, but was still unable to determine the injury. Fredrick claims he submitted additional requests for medical services from April to June 2010 regarding his shoulder injury. He alleges that despite being prescribing certain medical treatment, Nurse Stogner refused the doctor's orders. Fredrick claims he then sent a letter to the sheriff of Marion County, Berkley Hall, regarding how MWCF staff was handling inmate healthcare.

---

[2]Fredrick had previously been convicted of false pretenses in Marion County. After violating the conditions of his probation, he was placed in MWCF awaiting a revocation hearing.

Fredrick, proceeding *pro se* and *in forma paupreis*, filed his 42 U.S.C. § 1983 complaint in this Court on July 20, 2010. He names David Miller, Laura Stogner, Berkley Hall,[3] and Veronica Hall as defendants to the lawsuit. In his complaint and as clarified by his testimony at the *Spears*[4] hearing, Fredrick alleges that Officer Miller used excessive force during the March 16, 2010 incident and thereafter, prevented him from receiving medical treatment for his resulting injuries. Fredrick asserts that the remaining defendants denied and/ or delayed medical treatment to him. Specifically, he asserts that Laura Stogner did not follow the prescribed course of treatment; Berkley Hall, as sheriff, was the ultimate decision maker regarding medical treatment and failed to train his staff to provide proper medical care; and Veronica Hall, as master sergeant in charge of personnel at MWCF, was responsible for denying and/ or impeding proper medical care to him. Since the plaintiff's claims arise under § 1983 and the Eight Amendment to the United States Constitution, this Court has subject matter jurisdiction over the case based on a federal question, 28 U.S.C. § 1331. The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case. *See* Doc. 43.

Marion County, on behalf of Berkley Hall in his official capacity, filed its motion for summary judgment [62] on November 18, 2011. The same day, Laura Stogner and David Miller filed their joint motion for summary judgment [64] based on qualified immunity. On December 9, 2011, Fredrick moved to dismiss summary judgment [72] on grounds that additional discovery

---

[3]Plaintiff is only suing Berkley Hall in his official capacity; therefore, Marion County is the proper defendant.

[4]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

was necessary.[5] Stogner, Miller, and Marion County responded in opposition to the plaintiff's motion. On June 13, 2012, Veronica Hall moved for summary judgment [86] based on qualified immunity. Fredrick responded in opposition to the pending motions on August 3, 2012. Defendants did not file a rebuttal to the plaintiff's response.

Legal Authority

I. Summary Judgment Standard

Summary judgment is proper when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact issue exists where a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In evaluating a motion for summary judgment, the court must construe the facts and evidence in the light most favorable to the nonmoving party. *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.*, 635 F.3d 734, 736 (5th Cir. 2011). If the party seeking summary judgment meets its burden, the nonmoving party must then "come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

II. Qualified Immunity

Under § 1983, a government employee acting "within the scope of [his or her]

---

[5]Since the parties have completed discovery in this case, the Court considers Plaintiff's argument under Fed. R. Civ. P. 56(d) moot.

discretionary authority" is entitled to qualified immunity. *Cronen v. Texas Dept. Human Svcs.*, 977 F.2d 934, 939 (5th Cir. 1992). The doctrine of qualified immunity serves two purposes: "to hold public officials accountable when they exercise power irresponsibly and…to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If a government employee pleads "qualified immunity," the court must enter a judgment in favor of the employee unless his or her conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity is an affirmative defense; therefore, the defendant must "plead and establish his entitlement to [it]." *Cronen*, 977 F.2d at 939. To satisfy its burden, the defendant must prove that the alleged conduct "occurred while he was acting 'in his official capacity and within the scope of his discretionary authority.'" *Id.* (quoting *Garris v. Rowland*, 678 F.2d 1264, 1271 (5th Cir. 1982)). Once the requisite showing is made, the burden then shifts to the plaintiff to rebut the defendant's entitlement to immunity. *Cronen*, 977 F.2d at 939. To overcome a qualified immunity defense, the plaintiff must show a genuine issue of fact as to whether "the official's allegedly wrongful conduct violated clearly established law." *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012) (quoting *Kovaic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010)).

<u>Discussion</u>

Fredrick asserts that his rights under the Eighth Amendment were violated at two points: (1) when Officer Miller used excessive force while restraining him; and (2) when Miller and the remaining defendants delayed and/ or denied him proper medical treatment. The Court will

address the excessive force claim first.

I.  Excessive Force

In resolving claims of excessive force, the United States Supreme Court states that the core inquiry is "not whether a certain [degree] of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1178, 175 L.Ed. 2d. 995 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed. 2d. 156 (1992)). For a plaintiff to prevail on an excessive force claim, he must prove that the assault occurred, and that it was done "maliciously and sadistically" rather than in good faith to maintain order or restore discipline. *Wilkins*, 130 S.Ct. at 1180.

Qualified immunity "protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). "[I]f a constitutional violation is found to have occurred, the court must determine whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Kaufman Cnty.,* 352 F.3d 994, 1002 (5th Cir. 2003) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed. 2d. 666 (2002)). The Supreme Court provides that a constitutional right:

> ...must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...but it is to say that in light of pre-existing law[,] the unlawfulness must be apparent.
>
> *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987).

The parties do not dispute that the March 16, 2010 incident took place. They agree that Officer David Miller handcuffed Plaintiff and pulled his arm to lift him from the floor. Likewise, they agree that Plaintiff, as a prisoner, has an Eighth Amendment right to be free from cruel and unusual punishment. There is a dispute, however, regarding whether the force used was excessive enough to amount to a constitutional violation.

Plaintiff argues that Officer Miller was not acting in good faith at the time of the incident because Plaintiff "had given [Miller] no reason to restrain...and use force against [him]." Transcript of Omnibus/ Screening Proceedings 13:21-22. Plaintiff asserts that the officer acted intentionally and maliciously. He maintains that Miller "could have assisted [him] up without causing injury, but when [Miller] grabbed [Plaintiff] by the hands and proceeded to lift [him] up strictly by [his] arms...that's what caused [the] actual injury." Plaintiff argues that Officer Miller cannot prove that the amount of force used was justifiable without showing that Plaintiff was behaving violently or assaultive towards him or another officer before or after he was retrained.

Officer Miller responds by arguing that there is no credible evidence showing that he used more force than necessary to regain order and control of Plaintiff. Miller argues, and Plaintiff concedes, that he restrained Plaintiff because he felt Plaintiff was acting "unruly." *See* Mem. Brief [65] at 8; *see also* Transcript of Omnibus/ Screening Proceedings 13:15-16. Miller contends that he did not use excessive force against Plaintiff and, assuming that the Court finds otherwise, he acted objectively reasonable under the circumstances.

In the Court's opinion, Plaintiff has stated a claim for excessive force. However, Plaintiff has not shown that his injuries, if any, resulted from excessive force that was clearly unreasonable given the circumstances of the incident. *See Poole v. City of Shreveport*, No. 11-

30158, 2012 WL 3517357, at *1 (5th Cir. Aug. 16, 2012).

Officer Miller handcuffed Plaintiff, who was lying on the floor with his hands behind his back. Miller lifted Plaintiff from the floor by pulling his wrist, which caused Plaintiff pain and allegedly "tore something" in his right shoulder. According to Plaintiff, Miller could have prevented or lessened Plaintiff's pain and/ or injury had he lifted Plaintiff in a more careful manner. At the time of the incident, Plaintiff repeatedly told Miller and the other officer that he wanted to keep his property. There have been no allegations that Plaintiff behaved in a violent manner. Plaintiff suggests that Officer Miller purposely lifted him by his wrists in order to cause pain. Considering that Plaintiff was handcuffed while lying on the floor, it was reasonable for the officer to lift, or otherwise assist, Plaintiff to his feet. While perhaps Miller could have been more careful in lifting the plaintiff, it does not necessarily follow that he acted unreasonable under the circumstances. *See Poole*, 2012 WL 3517357 (affirming the district court's ruling that defendant officers acted objectively reasonable in tasering and yanking plaintiff's arms to handcuff him because the officers' actions corresponded to plaintiff's resistance); *see also Wagner v. Bay City, Texas, et al.,* 227 F.3d 316, 324 (5th Cir. 2000) (reversing the district court's denial of qualified immunity because officers' actions were objectively reasonable and consistent with trying to restrain a combative arrestee). Further, the Court is not convinced that a reasonable officer would have known that lifting an inmate by his wrists, or any similar manner, violates the Eighth Amendment prohibition against cruel and unusual punishment.

While making its reasonableness determination, the Court does not consider the officer's subjective intent. *See Graham v. Connor, et al.*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed. 2d 443 (1989) (explaining that an officer's subjective intent or motivation does not turn an

8

objectively reasonable use of force into a constitutional violation). Prison officers are often required to make split-second decisions when restraining inmates. Considering the circumstances giving rise to Miller's actions during the incident, the Court finds that Miller's actions were not objectively unreasonable. Therefore, he is entitled to qualified immunity, and summary judgment should be granted in his favor on this claim.

The Court now evaluates whether Defendants delayed and/ or denied Plaintiff medical treatment.

II.  Delay and/or Denial of Medical Treatment

The Eighth Amendment requires prison officials to "ensure that inmates receive adequate...medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed. 2d. 811 (1994). An official fails to satisfy that duty when his or her conduct "demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citation omitted).

A delay in medical treatment only violates the Eighth Amendment "if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also*, *Stewart v. Murphy*, 174 F.3d 530, 533-534 (5th Cir. 1999). Prison officials cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The evidence in this case shows that Plaintiff received medical treatment. Plaintiff

alleges that Officer Miller's refusal to give him a sick call request constitutes denial of medical treatment. To support his argument, Plaintiff points to MWCF policies regarding inmate access to medical services. Plaintiff asserts that the remaining defendants also denied and/ or impeded his access to medical services. He claims Nurse Stogner did not follow Dr. Walker's treatment plan when she advised that the jail would not pay for an MRI. Plaintiff's medical records reveal that Dr. Walker recommended an MRI on September 20, 2010. Exh. E4 [93-13]. The next day, September 21, 2010, Plaintiff was transferred from MWCF to Central Mississippi Correctional Facility. *See* Exh. E5 [93-14]. This information suggests that regardless of Nurse Stogner's alleged statement, Plaintiff would not have received the procedure at MWCF because he was transferred to another facility. Further, Plaintiff admits he received medical attention from Dr. Walker several days after the March 16, 2010 incident.[6] Therefore, to the extent Plaintiff alleges denial of medical treatment, his claim cannot pass summary judgment.

Plaintiff also asserts Defendants delayed his medical treatment. Plaintiff claims Defendants were deliberately indifferent towards him and due to their conduct, he suffered permanent injury. Plaintiff admits that Dr. Walker, his treating physician at MWCF, never diagnosed an injury to his shoulder. However, he claims that another doctor diagnosed him with bursitis, or swelling, in his shoulder. Plaintiff's medical chart at SMCI shows he received medical care on October 12, 2010 and that his overall assessment was bursitis. Exh. G1 [93-18].

In the Court's opinion, the alleged delay in Plaintiff's medical treatment did not rise to the level of cruel and unusual punishment. First, the evidence does not indicate that Defendants

---

[6]Although it is unclear when Plaintiff first received medical treatment, Plaintiff alleges that "after completing a sick call request[,] he was not seen for several days." Pl.'s Response in Opp. to Mot. for Summ. J. [93] at 5.

were deliberately indifferent. Plaintiff submitted a sick call request and was seen by a doctor days later. Although Plaintiff alleges he completed a sick call request on March 16, 2010, there is no record of when the actual request was made. In any event, Plaintiff was not suffering from an apparent life-threatening or serious injury at the time of the altercation with Miller. His injuries, if any, did not require immediate attention.

When Plaintiff received medical care, the treating physician was unable to diagnose any injury. Dr. Walker did not indicate, and Plaintiff has offered no proof, that a delay in treatment exacerbated any injury Plaintiff might have suffered. Second, even if Defendants were deliberately indifferent, the delay did not result in substantial harm. Although Plaintiff submits he has bursitis, this injury was not diagnosed until October 2010, several months after the altercation with Officer Miller. Without evidence that his bursitis was caused by the altercation in March 2010 or that the injury is of any substance, Plaintiff cannot prevail on this claim.

<u>Conclusion</u>

Based on the foregoing analysis, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claims for excessive force and delay and/ or denial of medical treatment. Accordingly, Defendants' motions for summary judgment [62][64][86] are well taken and should be granted. Plaintiff's motion to dismiss [72] the Defendants' motion for summary judgment is denied. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered this date.

SO ORDERED, this the 22nd day of August, 2012.

                                                   **/s/MICHAEL T. PARKER**
                                                   MAGISTRATE JUDGE
                                                   UNITED STATES DISTRICT COURT
                                                   SOUTHERN DISTRICT OF MISSISSIPPI